DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Mary Yanik has appealed from a decision of the Summit County Court of Common Pleas, Domestic Relations Division, which found her in contempt and ordered her to pay the costs of the action. This Court affirms in part, reverses in part, and remands for further proceedings.
 I {¶ 2} In April 1989, Louis ("Father") and Mary ("Mother") Yanik were married. One child, Amber, was born as issue of the marriage in 1992. In 1997, the parties were divorced. The parties entered into a separation agreement, which was made a part of the court's divorce decree. Under the terms of the agreement, Mother was designated as the primary residential parent and legal custodian of Amber. The agreement established a schedule for Father's companionship with Amber, and specified that Father's companionship would be subject to further order of the court or agreement of the parties.
 {¶ 3} In October 2000, Father filed a motion seeking modification of the visitation schedule. Specifically, Father requested the court to phase in a plan culminating in the standard order of visitation. Mother responded by filing several motions, including a motion for an order that Father's companionship with Amber be supervised. The magistrate thereafter entered an order providing that Father's future visitation with Amber would be conducted under the supervision of Family Visitation Services in Tallmadge, Ohio.
 {¶ 4} On April 3, 2001, the magistrate entered another order regarding visitation with the child. Specifically, the magistrate ordered that Father would have supervised visits with Amber away from the Family Visitation Services facility every week for ninety minutes beginning March 26, 2001, until May 6, 2001. The magistrate's order further specified that 1) Mother would provide Amber's transportation to and from Family Visitation Services, 2) Mother would not accompany Amber during the visitations, and 3) Mother would encourage Amber to go with Father. In addition, the magistrate's order provided that, beginning May 7, 2001, Father would have companionship every Wednesday from 3:00 p.m. to 6:00 p.m., and every other Saturday from 2:00 p.m. to 5:00 p.m. Father was to be responsible for all transportation during these visitations, and Mother was to encourage the child to go with Father.
 {¶ 5} On April 26, 2001, Father filed a motion for an order holding Mother in contempt for failure to facilitate his visitations as ordered by the court. In July 2001, the magistrate entered another order that changed Father's visitation times and further provided:
"Father, Father's spouse or Father's parent may pick-up and drop off the child. If Father is unable to drive due to his surgery, he shall accompany whoever is picking Amber up.
"Father shall pick Amber up on Wednesdays at maternal grandmother's house. Visitation includes Wednesday, July 4, 2001.
"Father shall pick Amber up on Sunday at Mother's house.
"The parties shall communicate one hour before pick-up so that Father can be advised of any changes.
"Open telephone communication between father and daughter shall be encouraged by mother. Father shall call at reasonable times."
 {¶ 6} In September 2001, a hearing was held on Father's motion for contempt and other motions pending before the court. Following the hearing, the magistrate issued a decision finding Mother in contempt. Mother filed objections to the magistrate's decision, and a memorandum in support of her objections. The trial court overruled Mother's objections, and adopted the decision of the magistrate. Mother has timely appealed, asserting three assignments of error.
 II {¶ 7} Before proceeding to Mother's assignments of error, we note that Father has failed to timely file an appellate brief in this appeal. Consequently, this Court may accept Mother's statement of the facts and issues as correct and reverse the judgment if Mother's brief reasonably appears to sustain such action. See App.R. 18(C).
 Assignment of Error Number One
"The Trial Court Erred By Considering [Father's] Motion For Contempt Because The Motion For Contempt Lacked The Specificity Required By The Local Rules Of Practice And Procedure Of The Summit County Domestic Relations Court, As Well As An Affidavit, As Required By The Local Rules."
 {¶ 8} In her first assignment of error, Mother has argued that the trial court erred by considering Father's motion for contempt because the motion did not comply with the Local Rules of the Summit County Court of Common Pleas, Domestic Relations Division ("Loc.R."). Specifically, Mother has contended that the motion was not accompanied by an affidavit and did not contain specific facts forming the basis for the motion, in violation of Loc.R. 22.01.
 {¶ 9} Loc.R. 22.01 provides: "All motions for contempt and/or orders `to show cause' shall contain specific facts and shall be accompanied by an affidavit setting forth the specific facts forming the basis for the motion." The enforcement of local procedural rules is a matter within the discretion of the trial court. Huffaker v. Ramella
(1991), 75 Ohio App.3d 836, 839; Hanes v. Block (1945), 78 Ohio App. 394,397. As this Court explained in Lorain Cty. Bank v. Berg (July 22, 1992), 9th Dist. No. 91CA005183:
"We acknowledge that local rules, not in derogation of a statute, are to be adhered to by the court. Although local rules are of the court's own making, the preferred course of action is for the court to amend its rules rather than ignore them. However, we also recognize that local rules are of the court's own making, procedural in nature, and not substantive principles of law. Accordingly, it has been held that there is no error when, in its sound discretion, the court decides that the peculiar circumstances of a case require deviation from its own rules." (Citations omitted.) Berg, supra at 5.
 {¶ 10} An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 11} In the case sub judice, Father's motion for an order finding Mother in contempt asserted that Mother failed to allow Father's parenting time as ordered by the court in its orders dated March 26, 2001,[1] and that Mother continually interfered with the schedule ordered by the court. Father's motion also alleged that Mother was engaging in parental alienation, and causing Amber to suffer mental and emotional harm. Given these allegations, we must conclude that the trial court did not act arbitrarily, unreasonably, or unconscionably in finding that the specificity of the facts set forth in Father's motion complied with Loc.R. 22.01. Furthermore, Mother has failed to demonstrate that she was prejudiced in any way by the court's failure to strike or deny Father's motion on the ground that it lacked an accompanying affidavit. Consequently, we find no abuse of discretion by the court in denying Mother's request that the court refuse to consider Father's motion on the ground that it failed to comply with the requirements of Loc.R. 22.01. Mother's first assignment of error is without merit.
 Assignment of Error Number Two
"The Trial Court Erred By Finding [Mother] Guilty Of Contempt."
 {¶ 12} In her second assignment of error, Mother has argued that the trial court erred by holding her in contempt for failing to comply with the court's visitation orders. Mother has maintained that the record is devoid of any evidence that she failed to comply with Father's scheduled visitation as ordered by the court.
 {¶ 13} "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55, paragraph one of the syllabus. Punishment for civil contempt is for the benefit of the complainant and is remedial or coercive in nature, and thus may include conditional prison sentences.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." Denovchek v. Bd. of Trumbull Cty.Commrs. (1988), 36 Ohio St.3d 14, 16. An appellate court therefore will not overturn a lower court's determination in a contempt proceeding absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11.
 {¶ 14} In its order adopting the decision of the magistrate, the court found Mother "guilty of contempt for failing to facilitate visitation pursuant to the provisional orders of this Court while the matter was pending." The magistrate made detailed findings of fact on which the finding of contempt purportedly was based. Specifically, the magistrate found that Mother would only allow Father visitation with Amber in her home. The magistrate further found that Mother admitted to a denial of visitation, which she justified on the ground that Amber did not want to visit with Father. The magistrate also determined that there were problems with visitation throughout the summer, all of which "appeared to stem from Mother's reluctance to allow the child to spend time alone with Father." The magistrate noted that the court interviewed Amber in February 2001, "and at that time the child expressed a strong desire for Mother to not question her so extensively about her visits with her Father." The magistrate found that the guardian ad litem maintained concerns about Mother's interaction with Amber, and attributed to the guardian ad litem the opinion that Mother was actively preventing Amber from having a relationship with Father. Finally, the magistrate determined that "Mother actively interfered with visitation and only facilitated visitation after the extra-ordinary efforts of Family Visitation and Mediation and the guardian ad litem were brought to bear."
 {¶ 15} After thoroughly reviewing the record, we are unable to find support for the magistrate's findings on which the contempt citation is based. The only testimony suggesting that Mother had not complied with the court's orders regarding visitation was provided by Father, who testified that he and his family members tried to call Mother numerous times to arrange for visitation, but Mother was uncooperative over the telephone and refused to return Father's calls. Father also testified, however, that Mother had complied with the orders of the court since January 2001.[2] The record before this Court contains no basis, moreover, for the magistrate's findings that Mother would only allow Father visitation in her home, that Mother admitted to a denial of visitation, that Mother caused problems with Father's visitation throughout the summer, or that the guardian ad litem determined that Mother was actively preventing Amber from having a relationship with Father or interfering with Father's visitation pursuant to the court's orders. Accordingly, we must conclude that the trial court abused its discretion in determining that Mother was in contempt of the court's provisional visitation orders based on these unsupported findings. Mother's second assignment of error is well taken.
 Assignment of Error Number Three
"The Trial Court Erred By Entering An Order Assessing All Costs To [Mother]."
 {¶ 16} In her third assignment of error, Mother has argued that the trial court erred in assessing all costs to her. Mother has contended that the court's prior orders establishing Father's visitation schedule evenly divided the costs between both parties, and the court erred by ordering her to pay all costs in the instant action.
 {¶ 17} Civ.R. 54(D) provides: "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The Ohio Supreme Court has interpreted Civ.R. 54(D) as granting the trial court discretion to order that the prevailing party bear all or part of his or her own costs. See Vance v. Roedersheimer (1992), 64 Ohio St.3d 552,555. Accordingly, this Court will not reverse a lower court's assessment of costs absent an abuse of discretion. Keaton v. Pike Community Hosp.
(1997), 124 Ohio App.3d 153, 156.
 {¶ 18} In the case sub judice, the trial court suspended execution of Mother's sentence for contempt on the condition that she purge the contempt by, inter alia, paying the costs of the action. Clearly, our reversal of the finding of contempt against Mother relieves her of the obligation to pay costs as a condition of purging her contempt. However, the court's order also separately assessed costs to Mother. Insofar as Father's status as the "prevailing party" on his motion for contempt serves as the basis for this assessment, our reversal of the contempt citation similarly calls into question the court's separate assessment of all costs to Mother. We also note, however, that Father did prevail on his motion for the standard order of visitation and for attorney fees. In the same order, moreover, the trial court ruled against Mother on other various motions pending before the court.
 {¶ 19} Given the complexity of the proceedings below and our inability to ascertain the extent of the role played by the now-reversed contempt citation against Mother in the court's assessment of costs, we are in a poor position as a reviewing court to identify a "prevailing party" and justly allocate costs between Mother and Father. Consequently, we remand the matter to the lower court to re-assess the costs in light of our reversal of Mother's contempt citation. Mother's third assignment of error is well taken.
 III {¶ 20} Mother's first assignment of error is overruled; her second and third assignments of error are sustained. The trial court's contempt citation against Mother and assessment of costs against Mother are reversed, the remainder of the court's April 9, 2003 order is affirmed, and the matter is remanded to the lower court for a re-assessment of costs.
Judgment affirmed in part,
reversed in part,
and cause remanded.
SLABY, P.J.
BAIRD, J. CONCUR
[1] The record does not contain any entries journalized by the court on March 26, 2001. As noted supra, the magistrate's April 3, 2001 order prescribed weekly supervised visits beginning on March 26, 2001.
[2] Father later stated that it was since the guardian ad litem "stepped out of the picture" in June 2001, rather than January 2001, that Mother had been cooperative.